No. 19,564.

HENRY ALBACH, *Plaintiff*, v. HARLEIGH BENSON, *Defendant*.

SYLLABUS BY THE COURT.

1. POLICE JUDGE—*Cities of Second Class—Existence and Tenure of Office.* The office of police judge in cities of the second class being one of legislative creation for public convenience and welfare, the legislature has plenary power over its existence and tenure.

2. SAME—*Adoption of Commission Form of Government—Eliminates Elective Office of Police Judge.* The police judge of a city of the second class, elected in April, 1913, for a term of two years, accepted his certificate of election and entered upon the duties of his office subject to the power of the electorate to eliminate him as a city official by adopting the commission form of government and choosing a board of commissioners according to the provisions of chapter 82 of the Laws of 1909.

Albach v. Benson.

3. SAME—*Power of Commission to Appoint Police Judge.* On the election and qualification of a board of commissioners of a city of the second class which has adopted the commission form of government, such board is authorized to appoint a police judge of its own selection for a term of two years.

4. SAME—*Appointee Entitled to the Office.* On the qualification of such an appointee he is entitled to the office, although the term of a police judge elected under the general law before the adoption of the commission form of government has not expired.

Original proceeding in quo warranto. Opinion filed July 14, 1914. Judgment for the plaintiff.

*J. S. Amick,* of Lawrence, for the plaintiff.

*Ed T. Riling,* of Lawrence, for the defendant.

The opinion of the court was delivered by

BURCH, J.: This proceeding is brought to determine the rights of two claimants to the office of police judge of the city of Lawrence, a city of the second class.

The legislature of 1909 passed an act (amending a previous act) authorizing cities of the second class to adopt the commission form of government. (Laws 1909, ch. 82.) On April 1, 1913, the defendant was elected to the office of police judge under the general law governing cities of the second class, for a term of two years, commencing May 1, 1913, and received a certificate of election accordingly. He duly qualified and took possession of the office. On April 28, 1913, the city adopted the commission form of government by a majority vote of the electors at a special election called for the purpose of determining the matter. At the next regular election, held on May 7, 1914, a mayor and two commissioners were duly chosen as provided by the act of 1909, who qualified as such officers and thereupon became the governing body of the city.

Section 22 of the act of 1909 reads as follows:

"The board of commissioners shall appoint, by a majority vote of all the members thereof, the following

officers, to wit: A city attorney, a city clerk, a city treasurer, a police judge, a city engineer, a city marshal, a fire chief, and such other officers, assistants and employés as they may deem necessary for the best interests of the city; but no such officer shall be appointed until his term and salary shall be fixed by ordinance. The terms of all appointive officers shall be for two years: *Provided,* That they shall hold their respective offices until their successors are appointed and qualified; *Provided,* That in case of appointment to fill a vacancy such appointee shall only serve for the remainder of the term for which his predecessor was appointed." (Gen. Stat. 1909, § 1494.)

Pursuant to the authority thus granted, the board of commissioners appointed the plaintiff police judge for a term of two years commencing June 1, 1914. The plaintiff duly qualified, but his demand for possession of the office and its records was resisted by the defendant.

The office of police judge in cities of the second class is one of legislative creation, and the legislature has plenary power over its existence and tenure. The office being an agency of government, established for public convenience and welfare, there is no contract, express or implied, with an incumbent, or other obligation, which deprives the legislature of power to abridge the term or to provide new or additional methods of removal. When the defendant received his certificate of election in 1913 he took it subject to the power of the electorate, under the act of 1909, to terminate his authority and to eliminate him as a holder of a city office by the adoption of a new form of city government.

The essence of the commission form of government authorized by the act of 1909 is this: The entire management of the city's affairs is committed to three men elected by a vote of the qualified electors. These men are paid a salary for their services and entire responsibility for the administration of the government of the municipality in all its branches is rested upon them.

Albach v. Benson.

They are the source of all authority, including the enactment of ordinances for every purpose, the appointment and removal of all subordinate officers, assistants, and employees, the collection of all taxes, and the making of all appropriations. The ends in view were to eliminate ward lines and partisan politics, to elevate the character and dignity of municipal service, to promote efficiency, and above all to center all responsibility for the city's welfare in every department upon a very limited number of perons who must act in the open and who can not evade or shift duties, obligations, and consequences of policies and conduct.

With the foregoing ends in view the legislature opened the act of 1909 with the following declaration:

"All cities of the second class which shall adopt the provisions of this act by a majority vote of all electors voting at a special election called for that purpose, as hereinafter provided, shall be governed by the provisions of this act." (Gen. Stat. 1909, § 1473.)

As a feature of the form of government established by adopting the provisions of the act, the governing body of the city, made accountable for the administration of the various subordinate municipal offices, is entitled to fill them with its own appointees, under section 1494, already quoted. This authority is given notwithstanding such offices will be filled with incumbents when the board of commissioners comes into power, and irrespective of the fact that some of such incumbents will hold title to their offices by election while others will hold by appointment.

Two sections of the act of 1909 read as follows:

"Sec. 15. The board of commissioners shall constitute the municipal government of such city, and shall be the successors of the mayor and council, and upon the qualifications of the members of said board of commissioners all rights, powers, duties and emoluments of the then mayor and councilmen of any city adopting this act shall cease and terminate.

"Sec. 36. Before the provisions of this act shall apply to any city of the second class in this state, it shall be submitted to a vote of the legally qualified electors of

such city for adoption and shall receive a majority of all votes cast at such election. . . If a majority of all the votes cast at such election shall be in favor of the adoption of this act, then at the next annual city election a mayor and two commissioners shall be elected as provided herein; and upon their election and qualification the right, powers, duties and emoluments of the then mayor and councilmen of such city shall cease and terminate." (Gen. Stat. 1909, §§ 1487, 1508.)

The defendant invokes the maxim, *expressio unius est exclusio alterius,* and argues that because the mayor and councilmen are mentioned in these sections the office of police judge is not affected by a change in the form of government. The argument proves too much, because if the proposed interpretation were sound the city marshal, city attorney, and city clerk, appointed for terms under the general law, would hold over, as well as elective officers like police judge and city treasurer, and so one of the fundamental purposes of the commission government act would be thwarted. The sections referred to, however, were not framed for the purpose of limiting the classes of officers who must surrender their offices with the advent of commission government but were intended to provide for a succession of power and to fix the time when the transfer should take effect.

The defendant also refers to the section of the commission government act which provides that existing ordinances shall remain in force until amended or repealed and that tax proceedings, contracts, and property rights shall not be affected by the change in the form of government. (Gen. Stat. 1909, § 1505.) This section manifestly has no reference to the agencies by which municipal affairs are to be administered under the new regime.

The result is that the plaintiff and not the defendant is the police judge of the city of Lawrence and as such is entitled to possession of the office, its records

and appurtenances, to exercise its powers, to enjoy its privileges, and to receive its emoluments.

Judgment is entered accordingly for the plaintiff.